UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF AYELET ARNIN                          :
By and through its representative               :
Nimrod Arnin                                    :
                                                :
and                                             :
                                                :
NIMROD ARNIN                                     :
                                                :
and                                             :
                                                :
ESTATE OF SIVAN SHA'ABARANY                      :
By and though its Administrator                 :
Karen Goldstein                                 :
                                                :    Civil Action No. 24-cv-02093 (RCL)
and                                             :
                                                :
KAREN GOLDSTEIN                                  :
                                                :
and                                             :
                                                :
EPHRAIM SHA'ABARANY                             :
                                                :
and                                             :
                                                :
R.S.                                            :
By and though his legal guardians               :
Karen Goldstein and Ephraim Sha'abarany         :
                                                :
and                                             :
                                                :
ESTATE OF AVRAHAM HANKIN                         :
By and through its representative               :
Rebecca Goldstein Hankin                        :
                                                :
and                                             :
                                                :
REBECCA GOLDSTEIN HANKIN                         :
                                                :
and                                             :
                                                :
E.S.H.                                          :
By and through his legal guardian               :

1

Rebecca Goldstein Hankin                               :
                                                       :
and                                                    :
                                                       :
Y.H.                                                   :
By and through her legal guardian                      :
Rebecca Goldstein Hankin                               :
                                                       :
and                                                    :
                                                       :
G.H.                                                   :
By and through his legal guardian                      :
Rebecca Goldstein Hankin                               :
                                                       :
and                                                    :
                                                       :
T.H.                                                   :
By and through her legal guardian                      :
Rebecca Goldstein Hankin                               :
                                                       :
and                                                    :
                                                       :
CARL STEVEN HANKIN                                     :
                                                       :
and                                                    :
                                                       :
YAFFA HANKIN                                            :
                                                       :
and                                                    :
                                                       :
MOSHE SHALOM HANKIN                                    :
                                                       :
and                                                    :
                                                       :
RACHEL ETHEL HANKIN                                    :
                                                       :
and                                                    :
                                                       :
MIRIAM HANKIN                                          :
                                                       :
and                                                    :
                                                       :
ESTATE OF ORI MORDECHAI SHANI                          :
By and though its Administrator                        :
Miriam Shani                                           :
                                                       :

2

and                                                       :
                                                          :
MIRIAM SHANI                                              :
                                                          :
and                                                       :
                                                          :
R.S.                                                      ;
By and though his legal guardian                          :
Miriam Shani                                              :
                                                          :
and                                                       :
                                                          :
SHULAMIT SHANI                                            :
                                                          :
and                                                       :
                                                          :
YEHOSHUA SHANI                                            :
                                                          :
and                                                       :
                                                          :
ELIYAHU YISHAI SHANI                                      :
                                                          :
and                                                       :
                                                          :
MALACHI SHANI                                             :
                                                          :
and                                                       :
                                                          :
RINAT BAT ZION GOLDSTEIN                                  :
                                                          :
and                                                       :
                                                          :
ELISHA SHANI                                              :
                                                          :
and                                                       :
                                                          :
ZOFIYA ZAGURI                                             :
                                                          :
and                                                       :
                                                          :
ESTATE OF BEN ZUSSMAN                                     :
By and though its Administrator                           :
Steven Tzvi Zussman                                       :
                                                          :
and                                                       :
                                                          :

STEVEN TZVI ZUSSMAN                          :
                                             :
and                                          :
                                             :
MIKA ZUSSMAN                                 :
                                             :
and                                          :
                                             :
B.Z.                                         :
By and though his legal guardian            :
Steven Tzvi Zussman                          :
                                             :
and                                          :
                                             :
ESTATE OF NAFTALI GORDON                     :
By and though its representative            :
Pesia Roth Gordon                            :
                                             :
and                                          :
                                             :
PESIA ROTH GORDON                            :
                                             :
and                                          :
                                             :
L.M.G.                                       :
By and though her legal guardian            :
Pesia Roth Gordon                            :
                                             :
and                                          :
                                             :
G.T.G.                                       :
By and though her legal guardian            :
Pesia Roth Gordon                            :
                                             :
and                                          :
                                             :
BEATRICE MIRIAM GORDON                       :
                                             :
and                                          :
                                             :
DANIEL YIGAL GORDON                          :
                                             :
and                                          :
                                             :
JACOB JOSHUA GORDON                          :
                                             :

and                                              :
                                                 :
SARAH AHUVA GORDON                               :
                                                 :
and                                              :
                                                 :
SHIRA GORDON POSNER                              :
                                                 :
and                                              :
                                                 :
RIVKA ZIONA GORDON RUSH                          :
                                                 :
and                                              :
                                                 :
DEVORA SHOSHANA GORDON                           :
                                                 :
and                                              :
                                                 :
M.H.                                             :
By and through her legal guardians              :
Mordechai and Tova Horowitz                      :
                                                 :
and                                              :
                                                 :
MORDECHAI HOROWITZ                               :
                                                 :
and                                              :
                                                 :
TOVA HOROWITZ                                    :
                                                 :
and                                              :
                                                 :
LILACH NAFTALYAHU                                :
                                                 :
and                                              :
                                                 :
Z.A.                                             :
By and through her legal guardian               :
Lilach Naftalyahu                                :
                                                 :
and                                              :
                                                 :
R.A.                                             :
By and through her legal guardian               :
Lilach Naftalyahu                                :
                                                 :

and                                              :
                                                 :
Y.A.                                             :
By and through her legal guardian                :
Lilach Naftalyahu                                :
                                                 :
and                                              :
                                                 :
DRORI WIZNER                                      :
                                                 :
and                                              :
                                                 :
ADELE RAEMER                                      :
                                                 :
and                                              :
                                                 :
ADAM LEVY                                         :
                                                 :
and                                              :
                                                 :
                                                 :
MECHEL FENDEL                                     :
                                                 :
and                                              :
                                                 :
DAVID FENDEL                                      :
                                                 :
and                                              :
                                                 :
BINYAMIN BEZALEL FENDEL                           :
                                                 :
and                                              :
                                                 :
GEDALYA FENDEL                                    :
                                                 :
and                                              :
                                                 :
MERAV SARA FENDEL                                 :
                                                 :
and                                              :
                                                 :
A.Z.F.                                           :
by and through her legal guardians               :
Gedalya and Merav Fendel                         :
                                                 :
and                                              :

:

BRACHA F. VAKNIN                                          :

                                                         :

and                                                      :

                                                         :

S.M.V,                                                   :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

E.V.                                                     :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

M.V.                                                     :
by and through his legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

S.R.V.                                                   :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

A.V.                                                     :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

K.V.                                                     :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

                                                         :

Ak.V.                                                    :
by and through her legal guardian                        :
Bracha F. Vaknin                                         :

                                                         :

and                                                      :

ESTATE OF LAOR ABRAMOV                          :
By and through its representative               :
Michal Halev                                    :
                                                :
and                                             :
                                                :
MICHAL HALEV                                     :
                                                :
and                                             :

DAVID ABRAMOV                                    :
                                                :
and                                             :
                                                :
NAOMI PETEL ADLER                                :
                                                :
and                                             :
                                                :
AMIR ADLER                                       :
                                                :
and                                             :
                                                :
E.P.A.                                           :
by and through his legal guardian               :
Naomi Petel Adler and Amir Adler                 :
                                                :
and                                             :
                                                :
N.A.                                             :
by and through his legal guardian               :
Naomi Petel Adler and Amir Adler                 :
                                                :
and                                             :
                                                :
A.C.A.                                           :
by and through his legal guardian               :
Naomi Petel Adler and Amir Adler                 :
                                                :
and                                             :
                                                :
GENADI BARZMAN                                   :
                                                :
and                                             :
                                                :

ESTATE OF NIR BINYAMIN                            :
By and through its representative,                :
Naomi Shaya                                       :
                                                  :
and                                               :
                                                  :
NAOMI SHAYA                                       :
                                                  :
and                                               :
                                                  :
IDO COHEN                                         :
                                                  :
and                                               :
                                                  :
GIL KAPELUK                                       :
                                                  :
and                                               :
                                                  :
HOWARD LOEWENSTERN                                :
                                                  :
and                                               :
                                                  :
SHARON LOEWENSTERN                                :
                                                  :
and                                               :
                                                  :
YAKIR LOEWENSTERN                                 :
                                                  :
and                                               :
                                                  :
DAVID LOEWENSTERN                                 :
                                                  :
and                                               :
                                                  :
NOAM LOEWENSTERN                                   :
                                                  :
and                                               :
                                                  :
YECHIEL LOEWENSTERN                                :
                                                  :
and                                               :
                                                  :
YOCHEVED LOEWENSTERN                               :
                                                  :
and                                               :
                                                  :

ESTATE OF ARI YOEL FULD                    :
by and through its representative           :
Miriam Fuld                                 :
                                            :
and                                         :
                                            :
MIRIAM FULD                                 :
                                            :
and                                         :
                                            :
NATAN SHAI FULD                             :
                                            :
and                                         :
                                            :
NAOMI FULD ETTINGER                         :
                                            :
and                                         :
                                            :
TAMAR GILA FULD BEASLEY                     :
                                            :
and                                         :
                                            :
ELIEZAR YAKIR FULD                          :
                                            :
and                                         :
                                            :
HARVEY JONAS YONAH FULD                     :
                                            :
and                                         :
                                            :
MARY ALICE FULD                            :
                                            :
and                                         :
                                            :
DANIEL YAAKOV FULD                          :
                                            :
and                                         :
                                            :
EYTAN FULD                                  :
                                            :
and                                         :
                                            :
HILLEL CHAIM SHLOMO FULD                    :
                                            :
and                                         :
                                            :
ESTATE OF JUDAH HERZEL HENKIN               :

By and through its representative            :
Anne Chana Henkin                           :
                                            :
and                                         :
                                            :
ANNE CHANA HENKIN                           :
                                            :
and                                         :
                                            :
ADERET RIVKAH HENKIN STERN                  :
                                            :
and                                         :
                                            :
ELIASHIR ELIJAH HENKIN                      :
                                            :
and                                         :
                                            :
JACOB BECHOR-SHALOM HENKIN                  :
                                            :
and                                         :
                                            :
JOSEPH GIL HENKIN                           :
                                            :
and                                         :
                                            :
TAAMA FREIDA HENKIN YAAKOVSON               :
                                            :
and                                         :
                                            :
THE ESTATE OF MAX D. STEINBERG              :
By and through its representative           :
Stuart E. Steinberg                         :

and

STUART E. STEINBERG                         :
                                            :
and                                         :
                                            :
EVIE R. STEINBERG                           :
                                            :
and                                         :
                                            :
PAIGE P. TEREN                              :
                                            :
and                                         :
                                            :

JAKE R. STEINBERG                         :
                                          :
            Plaintiffs                    :
                                          :
    v.                                    :
                                          :
DEMOCRATIC PEOPLE'S                       :
REPUBLIC OF KOREA                         :
Pyongyang, NORTH KOREA                    :
                                          :
                Defendants.               :
_____ :

## <u>AMENDED COMPLAINT</u>

1.      This action is brought by the Plaintiffs Estate of Ayelet Arnin, and Nimrod Arnin

("**Arnin Plaintiffs**"); Estate of Sivan Sha'abarany, Karen Goldstein, Ephriam Sha'arabany and

R.S. (collectively "**Sha'abarany Plaintiffs**"); Estate of Avraham Hankin, Rebecca Goldstein

Hankin, E.S.H., Y.H., G.H., T.H., Carl Steven Hankin, Yaffa Hankin, Moshe Shalom Hankin,

Rachel Ethel Hankin, and Miriam Hankin, (collectively "**Hankin Plaintiffs**"); Estate of Ori

Mordechai Shani, Miriam Shani, R.S., Shulamit Shani, Yehoshua Shani, Eliyahu Yishai Shani,

Malachi Shani, Rinat Bat Zion Goldstein, Elisha Shani, and Zofiya Zaguri (collectively "**Shani**

**Plaintiffs**");  Estate of Ben Zussman, Steven Tzvi Zussman, Mika Zussman and B.Z. (collectively

"**Zussman Plaintiffs**"); Estate of Naftali Gordon, Pesia Roth Gordon, L.M.G., G.T.G., Beatrice

Miriam Gordon, Daniel Yigal Gordon, Jacob Joshua Gordon, Sarah Ahuva Gordon, Shira Gordon

Posner, Rivka Ziona Gordon Rush, and Devora Shoshana Gordon (collectively "**Gordon**

**Plaintiffs**"); M.H., Mordechai Horowitz, and Tova Horowitz (collectively, "**Horowitz**

**Plaintiffs**"); Lilach Naftalyahu, Z.A., R.A., and Y.A. (collectively "**Naftalyahu Plaintiffs**");

Drora Wizner ("**Wizner Plaintiff**"); Adele Raemer ("**Raemer Plaintiff**"); Adam Levy ("**Levy**

**Plaintiff**"); Mechel Fendel, David Fendel, and Binyamin Bezalel Fendel (collectively "**M. Fendel**

**Plaintiffs**"); Gedalya Fendel, Merav Sara Fendel, and A.Z.F. (collectively "**G. Fendel**

Plaintiffs"); Brach F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V. and Ak.V. (collectively "**Vaknin Plaintiffs"**); Estate of Laor Abramov, Michal Halev and David Abramov (collectively "**Abramov Plaintiffs**"); Naomi Petel Adler, Amir Adler, E.P.A., N.A., and A.C.A. (collectively "**Adler Plaintiffs**"); Genadi Barzman ("**Barzman Plaintiff**"); the Estate of Nir Binyamin and Naomi Shaya ("**Binyamin Plaintiffs**"); Ido Cohen ("**Cohen Plaintiff"**); Gil Kapeluk ("**Kapeluk Plaintiff**"); Howard Loewenstern, Sharon Loewenstern, Yakir Loewenstern, David Loewenstern, Noam Loewenstern, Yechiel Loewenstern, and Yocheved Loewenstern ("**Loewenstern Plaintiffs**"); Estate of Ari Yoel Fuld, Miriam Fuld, Natan Shai Fuld., Naomi Fuld Ettinger, Tamar Gila Fuld Beasley, Eliezer Yakir Fuld, Harvey Jonas Yonah Fuld, Mary Alice Fuld, Daniel Yaakov Fuld, Eytan Fuld, and Hillel Chaim Shlomo Fuld (collectively the "**Fuld Plaintiffs**"); Estate of Judah Herzel Henkin, Anna Chana Henkin, Aderet Rivkah Henkin Stern, Eliashir Elijah Henkin, Jacob Bechor-Shalom Henkin, Joseph Gil Henkin and Taama Freida Henkin Yaakovson (collectively the "**Henkin Plaintiffs**"); and The Estate of Max D. Steinberg, Stuart E. Steinberg, Evie R. Steinberg, Paige P. Teren, and Jake R. Steinberg (collectively the "**Steinberg Plaintiffs**"), by and through their counsel, in the individual and/or official capacities of each Plaintiff as more particularly described in the caption and body of this action for their own benefit, and/or for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act 28 U.S.C. § 1605A(c) and pursuant to other applicable law. All Plaintiffs, by counsel, bring this action against Defendant **the Democratic People's Republic of Korea**.

2.      This action arises out of the murders of Ayelet Arnin z'l, Sivan Sha'arabany z'l, Avraham Hankin z'l, Ori Mordechai Shani z'l, Ben Zussman z'l, Naftali Gordon z'l, Laor Abramov z'l, Nir Binyamin z'l,  Hadar Kapeluk z'l, Elisha Loewenstern z'l, Max D. Steinberg z'l, Eitam Henkin z'l, and Ari Fuld z'l,  and the personal injuries of Nimrod Arnin, M.H., Lilach

Naftalyahu, Z.A., R.A., Y.A., Adele Raemer, Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel,  Gedalya Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V., Ak.V., Naomi Petel Adler, Amir Adler, E.P.A., N.A., A.C.A., and Ido Cohen committed during various and coordinated heinous and murderous terrorist attacks by the Islamic Resistance Movement aka HAMAS ("HAMAS"), a designated Foreign Terrorist Organization, ("FTO"), including but not limited to the NOVA Music Festival and elsewhere in Southern Israel and in Gaza on and since October 7, 2023 ("October 7th Terrorist Attacks") and attacks in 2014, 2015, 2018.

3.      On October 7, 2023, HAMAS carried out the bloodiest terror attack in Israel's history, which is now on record as the deadliest day for the Jewish people since the Holocaust.  In addition to murdering approximately 1,200 people, injuring thousands of others, burning and beheading innocent people in their homes and committing acts of mass rapes, HAMAS terrorists took over 250 people as hostages, almost half of whom -- at the time of this filing – are believed to remain in captivity alive or deceased in Gaza in furtherance of HAMAS's terror activities. Specifically, HAMAS has held out these hostages for ransom, most recently demanding that in exchange for each hostage (or remains of a deceased hostage) that would be released by HAMAS Israel must agree to various terms, including the release of Palestinian prisoners—many of whom have been serving multiple life sentences for committing murder and other violent criminal acts. This murderous conduct, including maiming, hostage taking and ransom demanding strategy has been a prominent feature of HAMAS's terror regime.  Indeed Yahya Sinwar, the HAMAS leader widely regarded as the mastermind of the October 7th attack, was previously released in such an exchange in 2011 after being imprisoned for orchestrating the abduction and killing of two Israeli soldiers and four Palestinians he considered to be collaborators in 1989.    In an effort to put an

end to the terror, murder, maiming and torture, and to rescue the hostages, Israel has sent into Gaza thousands of currently active and on reserve personnel who in their search through hundreds of miles of underground tunnels and other terrorist strongholds have encountered countless terror attacks and terrorist death traps, which has resulted in the death of hundreds of Israeli security personnel serving in the battle against HAMAS terror.

4.      On September 16, 2018, HAMAS killed Ari Fuld z'l, as more particularly described hereinafter and as set forth in his Complaint against the Islamic Republic of Iran and the Syrian Arab Republic, and the Memorandum Opinion and Judgment rendered by this Court in said action, all of which allegations are incorporated herein by reference.  See Memorandum Opinion, *Fuld, et al. v. Islamic Republic of Iran, et al*., Civil Action No. 20-2444 (RCL) (D.D.C. Mar. 27, 2024).

5.      On October 1, 2015, HAMAS killed Eitam Henkin z'l, as more particularly described hereinafter and as set forth in his Complaint against the Islamic Republic of Iran and the Syrian Arab Republic, and the Memorandum Opinion and Judgment rendered by this Court in said action, all of which allegations are incorporated herein by reference.  See Memorandum Opinion, *Henkin, et al. v. Islamic Republic of Iran, et al.,* Civil Action no. 18-01273 (RCL) (D.D.C. May 9, 2023).

6.      On July 20, 2014, HAMAS killed Max Steinberg z'l, as more particularly described hereinafter and as set forth in his Complaint against the Islamic Republic of Iran and the Syrian Arab Republic, and the Memorandum Opinion and Judgment rendered by this Court in said action, all of which allegations are incorporated herein by reference.  See Memorandum Opinion, *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C. Nov. 15, 2019).

7.      This matter is related to various actions pending or previously filed in this Court

including, but not limited to, *Arnin et al. v. Islamic Republic of Iran, et al.,* Civil Action No. 24-1819 (RCL) (D.D.C.) ("Arnin Case"), *Fuld, et al. v. Islamic Republic of Iran, et al*., Civil Action No. 20-2444 (RCL) (D.D.C.) ("Fuld Case"); *Henkin, et al. v. Islamic Republic of Iran, et al.,* Civil Action no. 18-01273 (RCL) (D.D.C.) ("Henkin Case"); *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C.) ("Steinberg Case"); *Baxter, et al. v Islamic Republic of Iran, et al.* Civil Action No. 11-02133 (RCL) (D.D.C.) ("Baxter Case"); and *Roth, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 11-01377 (RCL) (D.D.C.) ("Roth Case"), and others, in that each of those cases, as does this action, involves state sponsorship of the same terrorist organization, HAMAS, which has resulted in the death and injuries of American citizens, each of whom have suffered immeasurable damages recoverable under applicable US and/or applicable State of foreign law.

## JURISDICTION, VENUE, AND CHOICE OF LAW

8.      This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

9.      Defendant Democratic People's Republic of Korea ("North Korea") was originally designated as a State Sponsor of Terrorism by the United States, having been removed from such list on October 11, 2008, subsequently again having been designated as a State Sponsor of Terrorism by the United States Department of State on November 20, 2017; and since 2017 and continues to have been so designated to the present day.

10.     Defendant North Korea is subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A ("FSIA").

11.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District

Court for the District of Columbia.

12.      Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

13.      This Court has pendant jurisdiction over various claims of the parties that arise out of applicable District of Columbia or Israeli law.

**THE PARTIES**

   A.  **The Plaintiffs**

**The Arnin Family**

14.      Ayelet Arnin was heinously murdered on October 7, 2023 after suffering prolonged and great fear, anxiety and pain as a result of the HAMAS perpetrated in the October 7th Terrorist Attacks upon innocent attendees at the Supernova Music Festival ("NOVA").   Plaintiff the Estate of Ayelet Arnin is represented by Nimrod Arnin.

15.      Plaintiff Nimrod Arnin, Ayelet Arnin's brother, a renowned producer of the NOVA music festival, was also injured on October 7, 2023 after being attacked and suffering prolonged and great fear, anxiety and pain during the October 7th Terrorist Attack upon NOVA.

16.      At the time of the acts alleged, and at all other times relevant hereto, Ayelet Arnin was a citizen of the United States, and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Ayelet Arnin can sue and be sued in this Court.

17.      At the time of the acts alleged, and at all other times relevant hereto, Plaintiff Nimrod Arnin was a citizen of the United States and at all times relevant hereto, a victim of

"torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Nimrod Arnin has suffered greatly as a result of the murder of his sister and the injuries he sustained and can sue and be sued in this Court. Plaintiff Nimrod Arnin can sue and be sued in this Court.

**The Sha'arabany Family**

18.    Sivan Sha'arabany was heinously murdered on October 7, 2023 after suffering prolonged and great fear, anxiety and pain as a result of the HAMAS perpetrated October 7th Terrorist Attacks.   At the time of the acts alleged, and at all other times relevant hereto, Sivan Sha'arabany was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Sivan Sha'arabany can sue and be sued in this Court.

19.    Plaintiff Karen Goldstein is the biological mother of Sivan Sha'arabany and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Karen Goldstein has suffered greatly as a result of the murder of her daughter and can sue and be sued in this Court.

20.    Plaintiff Ephriam Sha'arabany is the biological father of Sivan Sha'arabany and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Ephriam Sha'arabany has suffered greatly as a result of the murder of his daughter and can sue and be sued in this Court.

21.    Plaintiff R.S. is the biological brother of Sivan Sha'arabany and has been, at all times relevant hereto, a citizen of the United States. Plaintiff R.S. has suffered greatly as a result of the murder of his sister and can sue and be sued in this Court.

**The Hankin Family**

22.    Avraham Hankin was murdered on October 7, 2023 as a result of the October 7th Terrorist Attacks.   At the time of the acts alleged, and at all other times relevant hereto, Avraham

Hankin was a citizen of the United States, and was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Avraham Hankin can sue and be sued in this Court.

23.    Plaintiff Rebecca Goldstein Hankin was, at all times relevant hereto, the wife of Avraham Hankin and a United States citizen. Plaintiff Rebecca Goldstein Hankin has suffered greatly as a result of the murder of her husband and can sue and be sued in this Court.

24.    Plaintiff E.S.H. is the biological son of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff E.S.H. has suffered greatly as a result of the murder of his father and can sue and be sued in this Court.

25.    Plaintiff Y.H. is the biological daughter of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff Y.H. has suffered greatly as a result of the murder of her father and can sue and be sued in this Court.

26.    Plaintiff G.H. is the biological son of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff G.H. has suffered greatly as a result of the murder of his father and can sue and be sued in this Court.

27.    Plaintiff T.H. is the biological daughter of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff T.H. has suffered greatly as a result of the murder of her father and can sue and be sued in this Court.

28.    Plaintiff Carl Steven Hankin is the biological father of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff Carl Steven Hankin has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

29.    Plaintiff Yaffa Hankin is the biological mother of Avraham Henkin and has been,

at all times relevant hereto, a United States citizen. Plaintiff Yaffa Hankin has suffered greatly as a result of the murder of her son and can sue and be sued in this Court.

30.    Plaintiff Moshe Shalom Hankin is the biological brother of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff Moshe Shalom Hankin has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

31.    Plaintiff Rachel Ethel Hankin is the biological sister of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff Rachel Ethel Hankin has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

32.    Plaintiff Miriam Hankin is the biological sister of Avraham Hankin and has been, at all times relevant hereto, a United States citizen. Plaintiff Miriam Hankin has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

**The Shani Family**

33.    Ori Mordechai Shani was in Kissufim and murdered while defending civilians on a kibbutz on October 7, 2023 as a result of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, Ori Mordechai Shani was a citizen of the United States, and was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiffs Estate of Ori Mordchai Shani can sue and be sued in this Court.

34.    Plaintiff Miriam Shani was, at all times relevant hereto, the wife of Ori Mordechai Shani. Plaintiff Miriam Shani has suffered greatly as a result of the murder of her husband and can sue and be sued in this Court.

35.    Plaintiff R.S. is the biological son of Ori Mordechai Shani and has been, at all times

relevant hereto, a citizen of the United States. Plaintiff R.S. has suffered greatly as a result of the murder of his father and can sue and be sued in this Court.

36.     Plaintiff Shulamit Shani is the biological mother of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Shulamit Shani has suffered greatly as a result of the murder of her son and can sue and be sued in this Court.

37.     Plaintiff Yehoshua Shani is the biological father of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Yehoshua Shani has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

38.     Plaintiff Eliyahu Yishai Shani is the biological brother of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Eliyahu Yishai Shani has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

39.     Plaintiff Rinat Bat Zion Goldstein is the biological sister of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Rinat Bat Zion Goldstein has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

40.     Plaintiff Elisha Shani is the biological brother of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Elisha Shani has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

41.     Plaintiff Malachi Shani is the biological brother of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Malachi Shani has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

42.     Plaintiff Zofiya Zaguri is the biological sister of Ori Mordechai Shani and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Zofiya Zaguri has suffered

greatly as a result of the murder of her brother and can sue and be sued in this Court.

**The Zussman Family**

43.    Ben Zussman was murdered in Gaza on December 3, 2023 as a result of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, Ben Zussman was a citizen of the United States, and was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Ben Zussman, acting by and through his father, Steven Tzvi Zussman, can sue and be sued in this Court.

44.    Plaintiff Steven Tzvi Zussman is the biological father of Ben Zussman and has been, at all times relevant hereto, a United States citizen. Plaintiff Steven Tzvi Zussman has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

45.    Plaintiff Mika Zussman is the biological sister of Ben Zussman and has been, at all times relevant hereto, a United States citizen. Plaintiff Mika Zussman has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

46.    Plaintiff B.Z. is the biological brother of Ben Zussman and has been, at all times relevant hereto, a United States citizen. Plaintiff B.Z. has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

**The Gordon Family**

47.    Naftali Gordon was murdered in Gaza on December 7, 2023 as a result of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, Naftali Gordon was a citizen of the United States, and was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of

"torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Naftali Gordon can sue and be sued in this Court.

48.    Plaintiff Pesia Roth Gordon is the widowed wife of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Pesia Roth Gordon has suffered greatly as a result of the murder of her husband and can sue and be sued in this Court.

49.    Plaintiff L.M.G. is the biological daughter of Naftali Gordon and of Pesia Roth Gordon, each United States citizens. Plaintiff L.M.G has suffered greatly as a result of the murder of her father and can sue and be sued in this Court.

50.    Plaintiff G.T.G. is the biological daughter of Naftali Gordon and Pesia Roth Gordon, each United States citizens. Plaintiff G.T.G. has suffered greatly as a result of the murder of her father and can sue and be sued in this Court.

51.    Plaintiff Beatrice Miriam Gordon is the biological mother of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Beatrice Miriam Gordon has suffered greatly as a result of the murder of her son and can sue and be sued in this Court.

52.    Plaintiff Daniel Yigal Gordon is the biological father of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Daniel Yigal Gordon has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

53.    Plaintiff Jacob Joshua Gordon is the biological brother of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Jacob Joshua Gordon has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

54.    Plaintiff Sarah Ahuva Gordon is the biological sister of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Sarah Ahuva Gordon has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

55.     Plaintiff Shira Gordon Posner is the biological sister of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Shira Gordon Posner has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

56.     Plaintiff Rivka Ziona Gordon Rush is the biological sister of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Rivka Ziona Gordon Rush has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

57.     Plaintiff Devora Shoshana Gordon is the biological sister of Naftali Gordon and has been, at all times relevant hereto, a United States citizen. Plaintiff Devora Shoshana Gordon has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

**The Horowitz Family**

58.     Plaintiff M.H. was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, M.H. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff M.H. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

59.     Plaintiff Mordechai Horowitz is the biological father of M.H. and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, David Fendel was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Mordechai Horowitz has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

60.    Plaintiff Tova Horowitz is the biological mother of M.H. and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, David Fendel was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Tova Horowitz has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**The Naftalyahu Family**

61.    Plaintiff Lilach Naftalyahu was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, Lilach Naftalyahu was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Lilach Naftalyahu has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

62.    Plaintiff Z.A. is the biological daughter of Lilach Naftalyahu and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. Plaintiff Z.A. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

63.    Plaintiff R.A. is the biological daughter of Lilach Naftalyahu and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. Plaintiff R.A. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

64.    Plaintiff Y.A. is the biological daughter of Lilach Naftalyahu was emotionally

injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. Plaintiff Y.A. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**Drora Wizner**

65.    Yair Wizner was injured in the October 7th Terrorist Attacks at the Keren Sholom Kibbutz.   Yair Wizner is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

66.    Plaintiff Drora Wizner is the biological mother of Yair Wizner and has been, at all times relevant hereto, a citizen of the United States.  Plaintiff Drora Wizner has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and during which her son Yair was injured and can sue and be sued in this Court.

**Adele Raemer**

67.    Plaintiff Adele Raemer sustained emotional injuries as a result of being within the "zone of danger" of the October 7th Terrorist Attacks.   At the time of the acts alleged, and at all other times relevant hereto, Adele Raemer was a citizen of the United States and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Adele Raemer has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**Adam Levy**

68.    Plaintiff Adam Levy sustained emotional injuries as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, Adam Levy was a citizen of the United States and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. §

1605A. Plaintiff Adam Levy has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**The M. Fendel Family**

69.    Plaintiff Mechi Fendel sustained emotional injuries as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, Plaintiff Mechi Fendel was a citizen of the United States and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Mechi Fendel has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

70.    Plaintiff David Fendel is, and at all times relevant hereto has been, the husband of Plaintiff Mechi Fendel and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, David Fendel was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff David Fendel has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

71.    Plaintiff Binyamin Bezalel Fendel is the son of Plaintiff Mechi Fendel and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, Bezalel Fendel was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Binyamin Bezalel Fendel has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**The G. Fendel Family**

72.    Plaintiff Gedalya Fendel sustained emotional injuries as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, Plaintiff Gedalya Fendel was a citizen of the United States and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Gedalya Fendel has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

73.    Plaintiff Merav Sara Fendel is, and at all times relevant hereto has been, the wife of Plaintiff Gedalya Fendel and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, Meray Sara Fendel was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Merav Sara Fendel has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

74.    Plaintiff A.Z.F. is the daughter of Plaintiff Gedalya Fendel and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, A.T.F. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff A.Z.F. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**The Vaknin Family**

75.    Plaintiff Bracha F. Vaknin was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all

other times relevant hereto, Bracha F. Vaknin was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Bracha F. Vaknin has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

76.    Plaintiff S.M.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, S.M.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff S.M.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

77.    Plaintiff E.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, E.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff E.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

78.    Plaintiff M.V. is the biological son of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, M.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.  Plaintiff M.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

79.     Plaintiff S.R.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, S.R.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff S.R.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

80.     Plaintiff A.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, A.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff A.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

81.     Plaintiff K.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, K.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff K.V. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

82.     Plaintiff Ak.V. is the biological daughter of Bracha F. Vaknin and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks At the time of the acts alleged, and at all other times relevant hereto, Ak.V. was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Ak.V. has suffered greatly as a result of the October 7th

Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

**The Abramov Family**

83.     Plaintiff Laor Abramov was heinously murdered on October 7, 2023 after suffering prolonged and great fear, anxiety and pain as a result of the HAMAS perpetrated October 7th Terrorist Attacks.   At the time of the acts alleged, and at all other times relevant hereto, Laor Abramov was eligible to be a citizen of the United States, was fighting terror and serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Laor Abramov can sue and be sued in this Court.

84.     Plaintiff Michal Halev is the biological mother of Laor Abramov and has been, at all times relevant hereto, a United States citizen. Plaintiff Michal Halev has suffered greatly as a result of the murder of her son and can sue and be sued in this Court.

85.     Plaintiff David Abramov is the biological father of Laor Abramov and has been, at all times relevant hereto, a United States citizen. Plaintiff David Abramov has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

**The Adler Family**

86.     Plaintiff Naomi Petel Adler was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, Naomi Petel Adler was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Naomi Petel Adler has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

87.     Plaintiff Amir Adler was emotionally injured as a result of being within the "zone

of danger" of the October 7th Terrorist Attacks. Amir Adler was a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Amir Adler has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

88.    Plaintiff E.P.A. is the biological son of Naomi Petel Adler and Amir Adler and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, E.P.A. was eligible to become a citizen of the United States and was a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff E.P.A. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

89.    Plaintiff N.A. is the biological son of Naomi Petel Adler and Amir Adler and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, N.A. was eligible to become a citizen of the United States and was a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff N.A. has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

90.    Plaintiff A.C.A. is the biological son of Naomi Petel Adler and Amir Adler and was emotionally injured as a result of being within the "zone of danger" of the October 7th Terrorist Attacks. At the time of the acts alleged, and at all other times relevant hereto, A.C.A. was eligible to become a citizen of the United States and was a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff A.C.A. has suffered

greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

## Genardi Barzman

91.    Elizabeta Nayidis was injured in the city of Ashaelon on October 9, 2023 as a result of the October 7th Terrorist Attacks   Elizabeta Nayidis is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

92.    Plaintiff Genadi Barzman is the biological son of Elizabeta Nayidis and has been, at all times relevant hereto, a citizen of the United States.  Plaintiff Genadi Barzman has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and during which his mother Elizabeta was injured and can sue and be sued in this Court.

## The Binyamin Family

93.    Plaintiff Nir Binyamin was murdered in Gaza on January 22, 2024 as a result of the October 7th Terrorist Attacks. Nir Binyamin was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Nir Binyamin, acting by and through its representative, Naomi Shaya, can sue and be sued in this Court

94.    Plaintiff Naomi Shaya is the common law wife of Nir Binyamin and Plaintiff Naomi Shaya has been, at all times relevant hereto, a United States citizen. Plaintiff Naomi Shaya has suffered greatly as a result of the murder of Nir and can sue and be sued in this Court.

## Ido Cohen

95.    Plaintiff Ido Cohen was attacked and physically injured on October 7, 2023 at the NOVA festival and has suffered prolonged and great fear, anxiety and pain as a result of the

October 7th Terrorist Attack upon NOVA. At the time of the acts alleged, and at all other times relevant hereto, Ido Cohen was a citizen of the United States and a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Ido Cohen has suffered greatly as a result of the October 7th Terrorist Attacks during which people were murdered and can sue and be sued in this Court.

## Gil Kapeluk

96.     Hadar Kapeluk was murdered in Gaza on January 22, 2024 as a result of the October 7th Terrorist Attacks. Hadar Kapeluk was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

97.     Plaintiff Gil Kapeluk is the biological brother of Hadar Kapeluk and has been, at all times relevant hereto, a United States citizen. Plaintiff Gil Kapeluk has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

## The Loewenstern Family

98.     Elisha Loewenstern was murdered in Gaza on December 13, 2023 as a result of the October 7th Terrorist Attacks.  At the time of the acts alleged, and at all other times relevant hereto, Elisha Loewenstern, a citizen of the United States, was fighting terror while serving in the Israel Defense Forces at the time of his murder by a HAMAS terrorist attack, and is a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

99.     Plaintiff Howard Loewenstern was, at all times relevant hereto, the father of Elisha Loewenstern and a United States citizen. Plaintiff Howard Loewenstern has suffered greatly as a result of the murder of his son and can sue and be sued in this Court.

100.     Plaintiff Sharon Loewenstern was, at all times relevant hereto, the mother of Elisha

Loewenstern and a United States citizen. Plaintiff Sharon Loewenstern has suffered greatly as a result of the murder of her son and can sue and be sued in this Court.

101.    Plaintiff Yakir Loewenstern was, at all times relevant hereto, the brother of Elisha Loewenstern and a United States citizen. Plaintiff Yakir Loewenstern has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

102.    Plaintiff David Loewenstern was, at all times relevant hereto, the brother of Elisha Loewenstern and a United States citizen. Plaintiff David Loewenstern has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

103.    Plaintiff Noam Loewenstern was, at all times relevant hereto, the brother of Elisha Loewenstern and a United States citizen. Plaintiff Noam Loewenstern has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

104.    Plaintiff Yechiel Loewenstern was, at all times relevant hereto, the brother of Elisha Loewenstern and a United States citizen. Plaintiff Yechiel Loewenstern has suffered greatly as a result of the murder of his brother and can sue and be sued in this Court.

105.    Plaintiff Yocheved Loewenstern was, at all times relevant hereto, the sister of Elisha Loewenstern and a United States citizen. Plaintiff Yocheved Loewenstern has suffered greatly as a result of the murder of her brother and can sue and be sued in this Court.

**The Fuld Family**

106.    Plaintiff Estate Ari Yoel Fuld, a Kings County, New York estate, is represented in this action by its duly appointed Administrator, Miriam Fuld. Ari Yoel Fuld was murdered on September 16, 2018 by a terror attack committed by HAMAS, a Foreign Terrorist Organization. At the time of the acts alleged, and at all other times relevant hereto, Ari Fuld was a citizen of the

United States and at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Ari Yoel Fuld can sue and be sued in this Court.

107.    Plaintiff Miriam Fuld was, at all times relevant hereto, the wife of Ari Fuld and a citizen of the United States. Plaintiff Miriam Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Miriam Fuld can sue and be sued in this Court.

108.    Plaintiff Natan Shai Fuld is the biological son of Ari Fuld and has been, at all times relevant hereto, a United States citizen. Plaintiff Natan Shai Fuld has suffered severe mental anguish and extreme emotional pain and suffering.  Plaintiff Natan Shai Fuld can sue and be sued in this Court.

109.    Plaintiff Naomi Fuld Ettinger is the biological daughter of Ari Fuld and has been, at all times relevant hereto, a United States citizen. Naomi Fuld Ettinger has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Naomi Fuld Ettinger can sue and be sued in this Court.

110.    Plaintiff Tamar Gila Fuld Beasley is the biological daughter of Ari Fuld and has been, at all times relevant hereto, a United States citizen. Plaintiff Tamar Gila Fuld Beasley has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Tamar Gila Fuld Beasley can sue and be sued in this Court.

111.    Plaintiff Eliezer Yakir Fuld is the biological son of Ari Fuld and has been, at all times relevant hereto, a United States citizen. Plaintiff Eliezer Yakir Fuld has suffered severe mental anguish and extreme emotional pain and suffering Plaintiff Eliezer Yakir Fuld can sue and be sued in this Court.

112.    Plaintiff Harvey Jonas Yonah Fuld is the biological father of Ari Fuld and has been,

at all times relevant hereto, a citizen of the United States. Plaintiff Harvey Jonas Yonah Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Harvey Jonas Yonah Fuld can sue and be sued in this Court.

113. Plaintiff Mary Alice Fuld is the biological mother of Ari Fuld and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Mary Alice Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Mary Alice Fuld can sue and be sued in this Court.

114. Plaintiff Daniel Yaakov Fuld is the biological brother of Ari Fuld and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Daniel Yaakov Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Daniel Yaakov Fuld can sue and be sued in this Court.

115. Plaintiff Eytan Fuld is the biological brother of Ari Fuld and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Eytan Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Eytan Fuld can sue and be sued in this Court.

116. Plaintiff Hillel Chaim Shlomo Fuld is the biological brother of Ari Fuld and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Hillel Chaim Shlomo Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Hillel Chaim Shlomo Fuld can sue and be sued in this Court.

**The Henkin Family**

117. Eitam Simon Henkin was murdered on October 1, 2015 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization. At the time of the acts alleged, and at all other times relevant hereto, Eitam Simon Henkin was a citizen of the United States and at all

times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

118.    Plaintiff Judah Herzel Henkin was the biological father of Eitam Simon Henkin, and, at all times relevant hereto, a citizen of the United States. Plaintiff Judah Herzel Henkin has passed away and is represented herein by his representative, Anne Chana Henkin.  Prior to his death, Plaintiff Judah Herzel Henkin suffered severe mental anguish and extreme emotional pain and suffering. The Estate of Plaintiff Judah Herzel Henkin can sue and be sued in this Court.

119.    Plaintiff Anne Chana Henkin is the biological mother of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Anna Chana Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Anne Chana Henkin can sue and be sued in this Court.

120.    Plaintiff Aderet Rivkah Henkin Stern is the biological sister of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Aderet Rivkah Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Aderet Rivkah Henkin Stern can sue and be sued in this Court.

121.    Plaintiff Eliashir Elijah Henkin is the biological brother of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Eliashir Elijah Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Eliashir Elijah Henkin can sue and be sued in this Court.

122.    Plaintiff Jacob Bechor-Shalom Henkin is the biological brother of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Jacob Bechor-Shalom Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Jacob Bechor-Shalom Henkin can sue and be sued in this Court.

123.     Plaintiff Joseph Gil Henkin is the biological brother of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Joseph Gil Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Joseph Gil Henkin can sue and be sued in this Court.

124.     Plaintiff Taama Freida Henkin Yaakovson is the biological sister of Eitam Simon Henkin, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Taama Freida Henkin Yaakovson has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Taama Freida Henkin Yaakovson can sue and be sued in this Court.

**The Steinberg Family**

125.     Plaintiff Estate of Max D. Steinberg, a Los Angeles County, California estate, is represented in this action by its duly appointed Special Administrator, Stuart E. Steinberg. Max D. Steinberg was murdered on July 20, 2014 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization.   At the time of the acts alleged, and at all other times relevant hereto, Max Steinberg was a citizen of the United States, and his California Estate has been opened on his behalf. Max Steinberg was, at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Max D. Steinberg can sue and be sued in this Court.

126.     Plaintiff Stuart E. Steinberg is the biological father of Max D. Steinberg, and has been, at all times relevant hereto, a citizen of the United States. Max D. Steinberg was murdered on July 20, 2014 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization ("FTO").   Plaintiff Stuart Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Stuart E. Steinberg can sue and be sued in this Court.

127.     Plaintiff Evie R. Steinberg is the biological mother of Max D. Steinberg, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Evie R. Steinberg has suffered

severe mental anguish and extreme emotional pain and suffering. Plaintiff Evie R. Steinberg can sue and be sued in this Court.

128.    Plaintiff Paige P. Teren (nee Steinberg) is the biological sister of Max D. Steinberg, and has been, at all times relevant hereto, a citizen of the United States. Plaintiff Paige P. Teren has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Paige P. Teren can sue and be sued in this Court.

129.    Plaintiff Jake R.Steinberg is the biological brother of Max D. Steinberg, and has been at all times relevant hereto, a citizen of the United States. Plaintiff Jake R. Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Jake R. Steinberg can sue and be sued in this Court.

B.  **Defendant North Korea**

130.    Defendant North Korea is a foreign sovereign state.

131.    For decades, North Korea has supported Palestinian militant groups, including in connection with terrorist attacks in Israel contrary to the national security interests of the United States. North Korea has specifically supported HAMAS in connection with attacks in Israel. As set forth herein, North Korea provided material support, resources, funding, direction, encouragement, safe haven and/or training for terrorist activities, for HAMAS terror attacks including the October 7 Attack, during all of which people were murdered.

132.    North Korea is not immune from the jurisdiction of this Court because Plaintiffs are seeking money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, . . . hostage taking, or the provision of material support or resources for such an act," as provided by 28 U.S.C. § 1605A(a).

133.    North Korea is now and has previously been designated as a State Sponsor of Terrorism since at least November 20, 2017, pursuant to Section 6(j) of the Export Administration

Act of 1979, 50 U.S.C. App. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C.§ 2371.

134.    28 U.S.C. § 1605A(a)(2)(A)(i)(I) allows a court to hear claims against a foreign state related to an act of state-sponsored terrorism if the claimants or the victims meet certain requirements in other provisions of 28 U.S.C. § 1605A(a)(2) and "the foreign state was designated a state sponsor of terrorism . . . as a result of such act . . . and remains so designated. Because North Korea was "designated as a state sponsor of terrorism at the time" and/or determined by the US State Department to have "repeatedly provided support for acts of international terrorism" at the time of ; and the October 7, 2023 acts of torture, extrajudicial killing, and hostage taking and at the time of the September 16, 2018 murder of Ari Fuld,  the October 1, 2015 murder of Eitam Henkin, and the July 20, 2014 murder of Max Steinberg, on which the various Plaintiffs' claims are based and are set forth in reverse chronological order, and "remains so designated" at the time of the filing of those claims, the requirements of 28 U.S.C. § 1605A(a)(2)(A)(i)(I) are met.

135.    Defendant North Korea is liable for the actions of HAMAS and its agents.

## STATEMENT OF FACTS

136.    Several designated Foreign Terrorist Organizations operate in Gaza and on the West Bank of the Jordan River, the most notorious and evil of them all is HAMAS. HAMAS committed widespread terrorist attacks during the First Intifada (1987 - 1993), the Second Intifada (2000 - 2005), before, during and since its violent takeover of the Gaza Strip in June 2007 following Israel's withdrawal from Gaza in 2005, and its subsequent and continuing terror attacks upon innocent citizens, residents and civilians living in and visitors to the State of Israel, including killing Plaintiffs Max Steinberg in 2014, Eitam Henkin in 2015 and Ari Fuld in 2018. Most recently, on and since October 7, 2023, HAMAS carried out the bloodiest terror attack in Israel's

history, which is now on record as the deadliest period for the Jewish people since the Holocaust.

137.    HAMAS is the Islamic Resistance Movement and is a radical Islamist terrorist organization that is committed to a violent "Jihad", which means "holy war" against Jewish people and others referred to as infidels.

138.    HAMAS is formally committed to the destruction of the State of Israel, a sovereign nation, is extremely anti-American, calls for the death of Jewish people, for death to Israel, death to America, rejects achieving a peaceful resolution of the long conflict between Israel and the Palestinians and is committed to achieving its objectives by violent means, including acts of international terrorism, including unspeakable, barbaric and heinous acts of murder, beheadings, burnings, maiming, rape, hostage-taking and terror committed against Americans, Israelis and others in violation of US law.

139.    HAMAS is an acronym for "Harakat Muqawama Islamiyya," which was founded in December 1987.

140.    The HAMAS political documents call for the establishment of an Islamic state throughout and in place of Israel by eliminating the entirety of the State of Israel through violent jihad.

141.    HAMAS propaganda since the September 11, 2001 World Trade Center attacks has praised and glorified Osama bin Laden and his supporters engaged in global jihad.

142.    Through its military wing, Izz ad-Din al-Qassam Brigades ("Al-Qassam Brigades"), and its various terrorist activities, HAMAS commits criminal activity, including murder, attempted murder, solicitation to commit murder, beheadings, burnings, maiming, rape, hostage-taking, torture and numerous other acts of international terrorism, as defined by 18 U.S.C. § 1331, as well as money-laundering and other illegal acts in violation of the criminal code of the

United States.

143.    On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist organization and, on October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act as amended by the Antiterrorism and Effective Death Penalty Act of 1996. HAMAS is also designated as a Specially Designated Global Terrorist Organization.

144.    HAMAS has also committed kidnapping and hostage taking in order to put pressure on the Israeli and American and other governments, consistent with its terror activities and its total rejection of peace with and the very existence of the sovereign state of Israel.

145.    Between 1999 and October 7, 2023, and subsequent thereto, the courts of the United States, including this Court, have rendered a number of decisions and entered numerous judgments finding that HAMAS was responsible for terrorist attacks in which American and Israeli citizens were targeted, killed and/or injured.

146.    HAMAS recruits and trains young people in camps, grade schools, high schools and on university campuses to be terrorists and commit single acts of terror including attacks on individual Israelis, Americans and Jews who are living or working or shopping in the towns and villages adjacent to or within the areas of the West Bank of the Jordan River and/or adjacent to the southern border between Gaza and the sovereign state of Israel.

147.    During the First Intifada, Second Intifada and continuing until today, HAMAS carried out hundreds of terrorist attacks intentionally injuring and killing American citizens through suicide bombings, shootings, stabbings, rocket attacks, car rammings, and a wide variety of other terror activities. HAMAS not only encourages these attacks, but is proud of the attacks

and the attackers, who become celebrated martyrs who directly or through their families receive monies from the Palestinian Authority and/or the Palestine Liberation Organization and/or others as incentives and rewards to commit or for having committed acts of murder and other acts of international terror.

### THE OCTOBER 7, 2023 HAMAS TERROR ATTACKS IN ISRAEL

143.    On the morning of October 7, 2023, HAMAS committed a well-planned and executed simultaneous wave of coordinated deadly attacks on Israeli civilian communities, Kibbutzim, villages, towns and individuals, including against those attending the Supernova Music Festival in Southern Israel, and against the border crossings and observation buildings and security and posts located within the sovereign state of Israel, slaughtering babies, raping women, burning whole families alive, committing murder, maiming and torture and taking hundreds of innocent civilians and persons to Gaza as hostages. As of the time of this filing, many of the hostages remain in HAMAS captivity, and in attempting to rescue these hostages, hundreds of active or reservist personnel from the Israeli Defense Forces engaged in fighting HAMAS terror have been killed in additional terror attacks in and around Gaza and elsewhere in Israel.

144.    The attacks began in the early morning with a rocket barrage of 3,500-5,000 rockets launched against Israel and vehicle-transported and powered paraglider incursions into its territory. HAMAS terrorists, who had been training and experimenting with planned attacks upon Israel and through the border fence between Gaza and Israel breached the Gaza–Israel barrier, massacring Israeli civilian communities, including but not limited to terror attacks in such communities as Be'eri, Kfar Aza, and at the NOVA music festival, and attacking Israeli security personnel and positions on the border between Israel and Gaza.

145.    HAMAS commander Mohammed Deif, in an audio message, announced the start of the October 7th Terrorist Attacks at around 6:30 a.m. Israel Daylight Time on Saturday, October 7, 2023, which it called Operation Al-Aqsa Flood.  Deif said the attack was in response to *inter alia* Israel's security measures around Gaza, in West Bank cities, and at the Al-Aqsa Mosque. Shortly thereafter, HAMAS Leader Ismail Haniyeh made a similar announcement in a televised address broadcast from Doha, Qatar, where HAMAS leadership is harbored outside of Gaza and the West Bank.

146.    Deif said more than 5,000 rockets had been fired from the Gaza Strip into Israel in a span of 20 minutes at the start of the operation. Israeli sources reported the launch of 3,000 projectiles from Gaza, killing five. Explosions were reported in areas surrounding Gaza and, in the Sharon, Plain, including Gedera, Herzliya, Tel Aviv, and Ashkelon. Air raid sirens were activated in Beer Sheva, Jerusalem, Rehovot, Rishon Lezion, and the Palmachim Airbase. Hamas issued a call to arms, with Deif calling on "Muslims everywhere to launch an attack."

147.    Palestinian terrorists also opened fire on Israeli boats off the Gaza Strip, while clashes broke out between Palestinians and the Israel Defense Forces in the eastern section of the Gaza perimeter fence.

148.    Simultaneously, approximately 3,000 Palestinian militants infiltrated Israel from Gaza using bulldozers and explosives to puncture several openings across Israel's security barrier on the Gaza border, which were then traversed by HAMAS terrorists operating pickup trucks, and motorcycles. Other HAMAS terrorists entered Israel on speedboats via Zikkim Beach on the Mediterranean Sea, and also by powered paragliders launched to carry them over the border barrier.

149.    The Sderot police station was reported to have come under HAMAS control, with terrorists killing 30 Israelis, including policemen and civilians. Early in the attack they deliberately destroyed the computer systems at the police station. This disabled communication and delayed the response to the attacks.

150.    Israeli first responders, upon information and belief, recovered documents from killed terrorists' bodies with instructions to attack civilians, including elementary schools and a youth center, to "kill as many people as possible", and to take hostages for use in future negotiations. Some of the terrorists wore body cameras to broadcast and record the acts. Upon information and belief, some terrorists used Captagon during the attacks—a stimulant produced in Syria and used throughout the Middle East. Captagon is provided by terrorist organizations to terrorist jihadist fighters in furtherance of their terrorist activities, as users of the drug report feelings of invincibility, high pain tolerance, and zombielike detachment from emotions and thoughts, such that they will have a thirst for fighting and killing and will shoot at whomever and whatever they see.

151.    The morning of the attack, an Israeli defense spokesman said that the terrorists from Gaza had entered Israel through at least seven locations and invaded four small rural Israeli communities, the border city of Sderot, and two IDF security bases from both land and sea. Israeli media reported that seven communities came under HAMAS control, including Nahal Oz, Kfar Aza, Magen, Be'eri, and Sufa.  The Erez Crossing was reported to have come under HAMAS control, enabling HAMAS terrorists to enter Israel from Gaza. Israeli Police Commissioner Kobi Shabtai said there were 21 active high-confrontation locations in southern Israel.

152.    Other HAMAS terrorists carried out an amphibious landing in Zikkim.  Palestinian sources claimed that the local Israeli army security base was stormed.  Terrorists also attacked an

IDF base outside Nahal Oz, leaving at least 18 dead and taking seven as hostages. An IDF fire investigation found that the terrorists had "ignited substances... that contain toxic gasses which can cause suffocation within minutes, or even less" both at the base and in civilian locations.

153.    In this massive surprise and barbaric onslaught, HAMAS terrorists committed unfathomable atrocities, including beheadings, burnings, murder, maiming, torture, widespread rape and sexual violence against women, that have reverberated globally.

154.    The October 7th Terror Attacks claimed the lives of approximately 1,200 individuals, with approximately 800 of the bodies confirmed as civilians and including at least 35 U.S. citizens. In addition to those murdered, several thousands of people have been wounded and injured, physically and emotionally. More than 250 people have been taken hostage, including at least 40 children, from reportedly 42 different countries, including the United States. Additionally, some bodies remain unidentified due to substantial mutilation.

155.    Since October 7th, approximately one third of the captured hostages are believed to have been killed while in captivity, many of whom were murdered by HAMAS or others acting in concert with HAMAS in Gaza, 7 hostages have been rescued by the IDF, and 111 hostages were released in negotiations. Over 100 people who were taken hostage by HAMAS or others acting in concert with HAMAS remain unaccounted for in Gaza. Of the hostages who are believed to be dead, many of their bodies are being kept in Gaza, in violation of applicable Jewish religious law requiring immediate decent burial of the dead.

156.    Some the heinous and barbaric attacks by HAMAS committed on and since October 7, 2023 include, but are not limited to, the (a) NOVA Music Festival Massacre, (b) Kfar Aza, Kibbutz Be'eri and other Israeli community massacres, (c) Hostage Takings, torture and murders, and (d) attacks upon those fighting HAMAS terror in Gaza:

*Nova Music Festival Massacre*

157.    As part of the Hamas-led attack, 364 civilians were killed and many more wounded at the Supernova Music Festival, an open-air music festival, during the Jewish holiday of Simhat Torah near kibbutz Re'im in southern Israel and within the borders of the sovereign State of Israel. At least 40 hostages were taken from the massacre at the NOVA Music Festival.

158.    The details of the hostages' whereabouts and conditions are not publicly known. The massacre at the festival was the largest terror attack in Israel's history and the worst Israeli civilian massacre ever.

*Kfar Aza, Kibbutz Be'eri and other Israeli community massacres*

159.    During the HAMAS attack, around 70 HAMAS terrorists attacked Kfar Aza, a kibbutz about 3 kilometers (1.9 mi) from the border with the Gaza Strip, massacring and murdering residents and abducting several hostages. The kibbutz had more than 700 residents, and it took the IDF two days to wrest back full control of it from HAMAS terrorists.

160.    On the morning of the attack, around 70 HAMAS terrorists carried out a massacre at Be'eri, an Israeli kibbutz near the Gaza Strip. At least 130 people were killed in the attack, including women, children, and infants, claiming the lives of 10% of the community's residents. Dozens of homes were also burned down.

## PRE-OCTOBER 7, 2023 ATTACKS

### Murder of Ari Fuld

161.    On September 16, 2018, Ari Fuld, an American citizen, was stabbed and killed in the Gush Etzion junction in Israel, located adjacent to a community where Israelis, Jews and Americans reside, work, shop and live.

162.    Ari Fuld left his home for a routine shopping trip near the popular Rami Levy supermarket at the Gush Etzion Junction when he was targeted by Khalil Jabarin and stabbed multiple times in the upper back and neck by the terrorist using a 21-centimeter knife. After he was stabbed, he pursued, shot, and wounded the terrorist, who was by that point attempting to also attack a local shop employee.  While the shop employee's life was spared, Fuld, who was transported to the hospital, subsequently died from his fatal injuries.

163.    An investigation revealed that the terrorist who stabbed and murdered Ari Fuld was carried out by HAMAS terrorist -Khalil Yusef Ali Jabarin.  Jabarin was arrested, indicted, and convicted for the murder of Ari Fuld and the attempted murder of three others.

164.    A few hours after the attack, HAMAS praised the attack.

165.    Eventually, HAMAS, through the official website of Al-Qassam Brigades, took responsibility for the terrorist attack by releasing a video.  In the video, the spokesperson for the Al-Qassam Brigades shows pictures of Khalil Jabarin and a video of Jabarin fleeing from the scene of the terrorist attack.  The video includes captions proclaiming that HAMAS' jihadist soldiers will continue their presence in the West Bank and will not leave.

166.    This Court has found, inter alia, that HAMAS killed Ari Fuld, and has held the Islamic Republic of Iran and the Syrian Arab Republic liable for the terrorist murder of Ari Fuld, as set forth in its Memorandum Opinion and Judgment entered prior hereto on behalf of the Fuld Plaintiffs. See Memorandum Opinion, *Fuld, et al. v. Islamic Republic of Iran, et al*., Civil Action No. 20-2444 (RCL) (D.D.C. Mar. 27, 2024).

**Murder of Eitam Simon Henkin**

167.    On October 1, 2015, Eitam Simon Henkin, an American citizen, his wife and four children were driving past the town of Beit Furik when he and his wife were shot and killed.

168.    Eitam Simon Henkin, his wife and four children were driving in their vehicle from a holiday high school reunion past the town Beit Furik when the vehicle was overtaken by three assailants, who shot and wounded Eitam Simon Henkin and his wife. After a wounded Eitam managed to halt the vehicle, the assailants came to the car in an attempt to kidnap the family. After a struggle between Eitam Simon Henkin and one of the assailants, he and his wife were shot and killed in front of their four children.

169.    An investigation revealed that the attack upon Eitam Simon Henkin was carried out by a HAMAS cell. The assailants who planned and conducted the attack were HAMAS operatives Yahia Mihammed Naif Abdullah Hajj Hamad, Samir Zahor Ibrahim Kusah, Karem Lufti Fatahi Razek, Zir Ziad Jamal Amar and Ragheb Ahmad Muhammad Aliwi. Each were arrested and indicted for murder, confessing to the murders and providing details of the attack.

170.    Following the attack, on October 2, 2015 HAMAS leader Mushi al-Masri praised the attack as a "heroic operation" and as a "natural response to the crimes of the enemy."

171.    This Court has found, inter alia, that HAMAS killed Eitam Henkin, and has held the Islamic Republic of Iran and the Syrian Arab Republic liable for the terrorist murder of Eitam Henkin and his wife, as set forth in its Memorandum Opinion and Judgment entered prior hereto on behalf of the Henkin Plaintiffs named herein, being the near-family members of Eitam Henkin. See Memorandum Opinion, *Henkin, et al. v. Islamic Republic of Iran, et al.,* Civil Action no. 18-01273 (RCL) (D.D.C. May 9, 2023).

**Murder of Max Steinberg**

172.    On June 12, 2014, HAMAS kidnapped three teenaged boys at a bus stop in the West Bank.

173.    This kidnapping was the first of many actions HAMAS undertook to launch and maintain an escalated campaign of terror in the summer of 2014.

174.    Saleh Arouri, founder and commander of Izz ad-Din al-Qassam Brigades, HAMAS' military wing, claimed that the kidnapping was an attempt to spark another intifada.

175.    During the First Intifada and Second Intifada, HAMAS carried out hundreds of terrorist attacks in which they intentionally injured and killed American citizens through suicide bombings, shootings and a wide variety of terror activities.

176.    On July 19, 2014, HAMAS terrorist agents slipped into Israel through a tunnel and murdered two Israeli citizens serving in the Israeli Defense Forces ("IDF").

177.    On July 20, 2014, Max Steinberg, an American citizen who had moved to Israel on September 11, 2012 to help in the response to the terror being waged against Israel, and who was serving in the Golani Brigade of the IDF, went to search for rocket launchers and terror tunnels in Gaza City, in keeping with his mission to help stop terror.

178.    While Max was in Gaza City for this counter-terrorism effort, a member of HAMAS shot at and hit Max's vehicle with an anti-tank rocket.

179.    Max was killed by the HAMAS terrorists' rocket attack.

180.    This Court has found, inter alia, that HAMAS killed Max Steinberg, and has held the Islamic Republic of Iran and the Syrian Arab Republic liable for the terrorist murder of Max Steinberg, as set forth in its Memorandum Opinion and Judgment entered prior hereto on behalf

of the Steinberg Plaintiffs. See Memorandum Opinion, *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C. Nov. 15, 2019).

## NORTH KOREA'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

181.    Defendant North Korea is a totalitarian dictatorship.

182.    For three generations, it has been ruled by the Kim family. North Korea has long been hostile to the U.S. and Israel; the first Kim family dictator, Kim Il Sung, called Israel an "imperialist satellite" of the U.S.

183.    As one court in this District has found: As a matter of policy, North Korea is hostile to the United States, and North Korea has attempted to undermine the political, economic, and strategic power and influence of the United States and its democratic allies. To accomplish this objective, North Korea has previously supported numerous Communist and other anti-Western terrorist organizations. These terrorist organizations are not only opposed to the United States, but they are also opposed to the State of Israel, which they view as allied with the United States.

184.    As a result of North Korea's policy, "North Korea has directly supported terrorist organizations that have carried out attacks in Israel," and courts in this District and elsewhere have held North Korea liable for such attacks. See, e.g., Kaplan v. Hezbollah, 213 F. Supp. 3d 27 (D.D.C. 2016); Calderon-Cardona v. Democratic People's Republic of Korea, 723 F. Supp. 2 441 (D.P.R. 2010).

185.    The U.S. first designated North Korea as a state sponsor of terrorism in 1988. That designation was officially lifted in 2008 as part of negotiations regarding the dismantling and oversight of North Korea's nuclear weapons program. However, North Korea's sponsorship of terror, including that of HAMAS continued unabated.  On November 20, 2017, the U.S. re-listed North Korea as a state sponsor of terrorism after the Secretary of State determined that North Korea

"had repeatedly provided support for acts of international terrorism since its State Sponsor of Terrorism designation was rescinded in 2008."

**North Korea's Provision of Material Support and Resources to Hamas**

186.    North Korea has long been providing arms, training, technology, and other assistance to Palestinian militants, including Iran's proxy partners – HAMAS and Hezbollah. Indeed, North Korea has provided many of the capabilities these proxies required to carry out their terrorist activities, including the killing of Max Steinberg in 2014, Eitan Henkin in 2015, Ari Fuld in 2018 and other attacks in Israel such as the October 7 Terror Attack.

187.    According to experts and public reports, in the 1970s and 1980s, there was a steady stream of North Korean weapons and other assistance to Palestinian militants. And in the late 1980s, "North Korea trained Palestinian terrorists, both those belonging to the [Palestinian Liberation Organization ("PLO")] and from Syrian and Libyan backed groups." Barry Rubin, "North Korea's Threats to the Middle East and Middle East's Threats to Asia," in "Asia Book," *The Middle East Review of International Affairs*," 2005, URL: http://meria.idc.ac.il/books/brkorea.html.  During the Cold War, North Korea's activities had been largely subsidized by the USSR. However, when Soviet subsidies to North Korea waned in the early 1990s, North Korea needed a new benefactor, and turned to the Islamic Republic of Iran, which publicly pronounces its call for the annihilation of the State of Israel and opposes the foreign policies of the United States. Since that time, North Korea has continued its large-scale military support to Syria, as well as to Iran and its proxies, including HAMAS and Hezbollah.  Those weapons have been found in the hands of HAMAS, having been used to attack and kill Americans and Israelis.

188.    North Korea's support for aggression and attacks in Israel in particular has been

part of this effort for decades. North Korea established a relationship with Yasser Arafat in the 1960s, and for decades thereafter supplied arms and training to multiple Palestinian militant groups, including the PLO, the Popular Front for the Liberation of Palestine ("PFLP"), and the Democratic Front for the Liberation of Palestine. North Korea supported efforts against Israel during the Six-Day War in 1967 and in the 1973 Yom Kippur War. North Korea also supported the Japanese Red Army, three members of which were recruited by the PFLP for the 1973 terrorist attack on Lod Airport, which killed 26 people and injured 80 others. Another court in this District held North Korea responsible for materially supporting that attack in Israel as well. *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27 (D.D.C. 2016).

189.    In more recent years, North Korea's support for enemies of Israel (and America) extended to Iran and Iranian proxies, beginning with Hezbollah and including HAMAS. According to experts, this support included supplying rocket systems and launchers, specialized training for "commando" units and their commanders, and small arms such as machine guns and rifles. Indeed, as a key supplier of arms to Iranian proxies, including HAMAS and Hezbollah, North Korea has maintained a steady, large-scale proliferation of weapons systems to Iran – everything from conventional weapons to ballistic missiles. This proliferation has been ongoing since the early 1980s and continues today. North Korea knows, or is reckless in not knowing, that weapons it supplies to Iran, Syria, and others have been and are likely to be sent to HAMAS and used in terrorist attacks in Israel, such as those that have killed Plaintiffs Steinberg, Henkin, Fuld and the numerous tragic victims of the October 7the Terror Attack.

190.    A court in this District also found North Korea to have provided specific assistance to Iran's proxies in connection with the design and construction of underground tunnel networks used in attacks in Israel. *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27 (D.D.C. 2016). In that case, the

Court found that North Korea provided "professional, military, and intelligence training and assistance in building a massive network of underground military installations, bunkers, depots and storage facilities" that Hezbollah used to wage war against Israel in 2006. Indeed, according to a research report, Hezbollah entered into a $13 million arrangement in 2013 with the Korea Mining Development Trading Corporation (a North Korean state-owned arms dealer and exporter of weapons and missile technology and equipment) to build a huge, 45-kilometer underground tunnel system, connecting key hubs in Lebanon. As far back as 2014, the former director for Asian affairs at the White House National Security Council observed that, as with Hezbollah, "Hamas' vast tunnel network almost certainly benefited from outside assistance, whether directly from North Korea or via Iran." At that same time, the *Telegraph* reported that Israeli military commanders supervising operations against Gaza similarly concluded that North Korean experts gave HAMAS advice on building its extensive network of tunnels that enabled fighters to move weapons without detection by Israeli drones That belief has continued to prevail in reports ever since, and HAMAS used the same tunnel network in killing Plaintiff Max Steinberg in 2014 and in executing various additional terror attacks, including but not limited to the October 7th Attacks and holding hundreds of hostages captive thereafter in those same terror tunnels.

191. North Korea's most recent wave of weapons proliferation to HAMAS began at least as early as 2009, when North Korea was caught shipping more than 35 tons of military equipment, including small arms, rocket propelled grenades ("RPGs"), and other weapons for use by Iran's terrorist proxies, including HAMAS. Investigators confirmed that the shipment had been paid for by Iran and was on its way for delivery to Hezbollah and HAMAS. According to experts, this intercepted shipment was undoubtedly one of multiple shipments from North Korea to Hezbollah and HAMAS.

192. North Korea's support for HAMAS continued. In July 2014, the very same month when Max Steinberg was murdered by HAMAS, The Telegraph reported that North Korea had entered into a deal with HAMAS to sell the terrorist organization rockets, rocket launchers, and communications gear – including guidance systems for multiple rocket launchers. According to experts, North Korea's support of HAMAS had become increasingly important at that time because Iran's support for HAMAS had temporarily slowed (but certainly did not stop) due to differences between them during the Syrian civil war. Accordingly, during that period (generally from 2012-2017, the period during which HAMAS killed Max Steinberg, Eitam Henkin and Ari Fuld), North Korea's support for HAMAS increased substantially. And when Iran renewed its more substantial support for HAMAS after 2017, all three state sponsors of terrorism – Iran, North Korea, and Syria – combined to strengthen HAMAS's terrorist organization with material support and resources leading up to the murder of Ari Fuld and including various additional attacks by HAMAS upon the land and people of the sovereign State of Israel, including the October 7th Attack.

193. North Korea's material support for the October 7th Attack was substantial and contributed greatly to the Attack's massively devastating impact. In addition to its support in helping HAMAS build the tunnel network the terrorists used in carrying out the Attack and then keeping hostages captive, North Korea's weapons featured prominently in HAMAS's rampage. The HAMAS terrorists who committed the Attack used at least hundreds of North Korean-supplied weapons. Many were found on, or left behind by, the terrorists, and bore unique North Korean markings demonstrating their source. HAMAS did not try to conceal the source of this weaponry. HAMAS propaganda videos showcase their terrorist fighters holding clearly marked and easily identifiable North Korean weapons, with their unique features, including the same types of

weapons included in the 2009 interdicted shipment.

194.    Public reports further confirmed North Korea's support of the October 7 Attack. South Korea's National Intelligence Service "confirmed Hamas's possession and use of North Korean-made weapons against Israel," releasing photographs of North Korean-made F-7 grenade launchers (RPGs) being used by HAMAS on October 7. A HAMAS field manual, found on the body of a HAMAS terrorist, included instructions for operating the North Korean F-7 RPGs. Other reports also provide evidence that North Korea supplied rocket shells used by HAMAS in the Attack. A senior official at South Korea's Joint Chiefs of Staff reported that "Hamas is believed to be directly or indirectly linked to North Korea in various areas, such as the weapons trade, tactical guidance and training," and that HAMAS "employed attack methods similar to Pyongyang's modus operandi." Public news reports discuss how the IDF confirmed recovering large numbers of North Korean weapons from HAMAS terrorists, and further reported that HAMAS repurposed F-7 engines to create anti-tank RPGs used in the October 7 Attack.

195.    North Korea provided material support and resources to HAMAS – both in the decades leading up to the October 7 Attack, and in the period leading up to the Attack – that enabled HAMAS to carry out numerous attacks in recent years, including the murder of Max Steinberg, Eitam Henkin, Ari Fuld and the October 7 Attack. HAMAS could not have carried out the various terrorist attacks, including the October 7th Attack without North Korea's support and sponsorship, and North Korea knew that HAMAS would use its support and resources to carry out attacks such as the October 7th Attack.

196.    As a direct and proximate result of the material support and resources North Korea provided to HAMAS, thousands of innocent people were killed or injured by Hamas in the period from at least 2009 until 2023 and in connection with the October 7 Attack, including Plaintiffs

herein.

197.    The duration, quantity, and quality of North Korea's material support, even if not designated for specific attacks, greatly contributed to HAMAS's ability to carry out terrorist attacks.  HAMAS and its terrorists could not have carried out the coordinated and continuing lethal attacks described in this Complaint without North Korea's support and sponsorship. North Korea and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, and North Korea continues to support HAMAS to this very day.

198.    As a direct and proximate result of the provision of the material support to HAMAS by the Defendant North Korea as described herein, hundreds of innocent people have been killed and grievously injured by acts of terrorism committed by HAMAS.   Among the Plaintiffs murdered and/or injured by HAMAS terror before, on and since October 7th include murdered Plaintiffs Ayelet Arnin,  Sivan Sha'arabany, Ben Zussman, Naftali Gordon, Avraham Hankin, Ori Mordechai Shani, Laor Abramov, Ari Fuld and Max Steinberg, and injured Plaintiffs Nimrod Arnin, M.H., Lilach Naftalyahu, Z.A., R.A., Y.A., Adele Raemer, Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel,  Gedalya Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V., Ak.V.  each of whose estates and/or family members are Plaintiffs named herein are each American citizens or as otherwise indicated in the within Complaint and are entitled to justice and an award of damages against North Korea for the heinous act of terrorist murder(s) committed upon each decedent and each of the Plaintiffs named herein.

### COUNT I
### WRONGFUL DEATH
### Under 28 U.S.C. §1605A(c) or in the alternative under the laws of the District of Columbia or Israeli Law

199.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations

set forth in all the foregoing paragraphs as if fully set forth herein.

200.    As recounted above, the deaths of Ayelet Arnin, Sivan Sha'abarany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max D. Steinberg, were caused by a willful and deliberate act of terror committed by HAMAS, a Foreign Terrorist Organization, with the material aid and support of the Defendant, North Korea who through its agents, financed the attacks, planned the attacks and/or rendered material support to the activities of HAMAS that resulted in the murders of Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani, Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max Steinberg, each being US nationals or otherwise entitled to recover under applicable US law. The agents of the Defendant were at all times acting within the scope of their agency and acted on the direction of and/or with the material support of the Defendant, North Korea.

201.    The attempted kidnapping and/or murder and/or injury of these decedents was an act of hostage taking and extrajudicial killing within the meaning of 28 U.S.C. §1605A.

202.    At the time of the attempted kidnapping and/or murder of, Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani, Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max D. Steinberg, each were nationals of the United States within the meaning of 28 U.S.C. §1605A(c)(1).

203.    The attempted kidnapping and/or murder of, Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon,  Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max Steinberg caused their estates, and/or their surviving near family members severe physical and emotional pain and suffering, severe emotional distress and mental anguish, pecuniary loss including loss of income and earning capacity, loss of guidance

companionship and society, loss of consortium and solatium; and incurred resultant damages.

204.    As a direct and proximate result of the willful, wrongful and intentional act of the Defendant, for which the Defendant is vicariously liable, for acts of terror that include the murdering or killing of each of the descendants which were committed during acts of international terror, each of the descendants who are Plaintiffs and/or their near family members who are Plaintiffs, each being a US national, suffered wrongful death and/or endured extreme mental anguish, physical injury, pain and suffering, solatium, and loss of the affection, love and companionship of their beloved family members for which the Plaintiffs and each of them seek an award of damages and judgment against the Defendant to the fullest extent of the law.

205.    WHEREFORE, each of the Plaintiffs demand that judgment be entered against the Defendant, North Korea, for the compensatory damages they suffered, including, but not limited to, wrongful death, pain, suffering, mental anguish, emotional distress, solatium and economic damages in such amounts as shall be proven at trial, and for their costs expended, including attorneys' fees, and otherwise as permitted by applicable law and this Court.

## COUNT II
## SURVIVAL DAMAGES ON BEHALF OF THE ESTATES OF, AYELET ARNIN, SIVAN SHA'ARABANY, AVRAHAM HANKIN, ORI MORDECHAI SHANI BEN ZUSSMAN, NAFTALI GORDON, LAOR ABRAMOV, NIR BINYAMIN AND ARI FULD

**Under 28 U.S.C. §1605A(c) or in the alternative the laws of the District of Columbia or Israeli Law**

206.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

207.    The attempted hostage taking and/or extrajudicial killing of Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin and Ari Fuld caused by the Defendant's actions, caused, Ayelet Arnin,

Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani, Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin and Ari Fuld, and their estates severe injury including pain and suffering prior to their deaths, pecuniary loss and loss of income.

208.    From the time each attack began until their deaths, Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin and Ari Fuld, suffered conscious pain and physical and mental anguish. These Plaintiffs acted in fear for their lives both before, during and after they were mortally wounded.

209.    Defendant's conduct was criminal, outrageous, extreme, wanton, willfully malicious and constituting an award of compensatory and punitive damages.

210.    WHEREFORE, the Defendant is liable for the full amount of the decedents' damages in sums as may hereinafter be determined.

## COUNT III
## PERSONAL INJURY
## Under 28 U.S.C. §1605A(c) or in the alternative under the laws of the District of Columbia or Israeli Law

211.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

212.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendant, its agents and instrumentalities, Nimrod Arnin, M.H., Mordechai Horowitz, Tova Horowitz, Lilach Naftalyahu, Z.A., R.A., Y.A., Adele Raemer, Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel, Gedalya Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V., Ak.V., Naomi Petel Adler, Amir Adler, E.P.A., N.A., A.C.A and Ido Cohen suffered personal injury, in that they endured extreme mental and emotional anguish, physical injury, pain and suffering, and economic loss, all to their damage,

and further, the immediate family members of these direct victims suffered extreme mental and emotional anguish. suffered extreme mental anguish, emotional pain and suffering, and the loss of society and companionship of the victims.

213.    Accordingly, each of the Plaintiffs being a US national bring claims for their personal injuries, including their extreme mental anguish against the Defendant pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia and/or the State of Israel or such other applicable law as the Court may determine.

214.    WHEREFORE, each of the Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

**COUNT IV**
**SOLATIUM**
**Under 28 U.S.C. §1605 A(c) or, in the alternative, in the laws of the District of Columbia or Israeli Law**

215.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

216.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendants, their agents and instrumentalities, the Plaintiffs who are close family members (parents, spouse, siblings and/or children) of those Plaintiffs named herein, who were killed and/or injured including, but not limited to, the near-family members of Plaintiffs Ayelet Arnin, Sivan Sha'arabany,  Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin, Ari Fuld and Max Steinberg,  and also the near family members of Eitam Henkin named herein, each of whom were killed by acts of HAMAS terror, and those Plaintiffs named herein who have been injured as a result of acts of HAMAS terror, each suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and

companionship of the victims.

217.    Accordingly, said Plaintiffs who are close family members of someone that was injured or killed bring claims for loss of solatium against the Defendant, pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia and/or the State of Israel or such other applicable law as the Court may determine.

218.    WHEREFORE, said Plaintiffs demand that judgment be entered against the Defendant an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Under the Laws of the District of Columbia or Israeli Law

219.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

220.    HAMAS terrorists willfully, violently, and forcefully perpetrated attacks and killed the decedents, Ayelet Arnin,  Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon,  Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max Steinberg, and/or the injuries to Nimrod Arnin, M.H., Mordechai Horowitz, Tova Horowitz, Lilach Naftalyahu, Z.A., R.A., Y.A., Adele Raemer, Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel,  Gedalya Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V., Ak.V., Naomi Petel Adler, Amir Adler, E.P.A., N.A., A.C.A and Ido Cohen each being US nationals except as otherwise indicated in this Complaint.

221.    The Plaintiffs, each of them suffered severe terror, severe mental anguish, bereavement and grief, witnessed the October 7th Terrorist Attacks or other attacks.

222.    In addition, the Plaintiffs were exposed to witnessing extreme violence and

suffering of their immediate family members but also many of them themselves were targeted during the terrorist attacks.

223.    The terror attacks in which Plaintiffs were killed and/or injured constituted extreme and outrageous terrorist conduct on the part of HAMAS, whose barbaric, heinous and unconscionable acts were funded, directed and materially supported by North Korea.

224.    As a direct and proximate result of the willful, wrongful, intentional, and reckless barbaric and murderous acts of HAMAS and its terrorists who were funded and directed by the Democratic People's Republic of Korea, Plaintiffs each and all suffered severe emotional distress, entitling them to an award of compensatory damages.

225.    Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against the Defendant in connection with the willful, wrongful, intentional, and reckless actions of HAMAS terrorists.  Such cause of action may be asserted pursuant to the laws of the District of Columbia and/or the State of Israel or such other applicable law as the Court may determine.

226.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

### COUNT VI
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Under the laws of the District of Columbia or Israeli Law

227.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

228.    The attempted hostage taking and/or murder of Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov,  Nir

Binyamin, Ari Fuld, Eitam Henkin and  Max Steinberg, and the injuries suffered Nimrod Arnin,

M.H., Mordechai Horowitz, Tova Horowitz, Lilach Naftalyahu, Z.A., R.A., Y.A., Adele Raemer,

Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel,  Gedalya

Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V.,

Ak.V., Naomi Petel Adler, Amir Adler, E.P.A., N.A., A.C.A and Ido Cohen were foreseeable

consequences of providing material support and aid to HAMAS.

229.    The actions of the Defendant were willful, extreme, outrageous, and/or grossly

negligent and were dangerous to human life and constituted a violation of applicable criminal law

and all international standards of civilized human conduct and common decency.

230.    As a direct and proximate result of the willful, wrongful, intentional, and reckless

barbaric and murderous acts of HAMAS and its terrorists who were funded and directed by North

Korea, Plaintiffs each and all suffered egregious emotional distress, entitling them to an award of

compensatory damages.

231.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant

in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by

applicable law and this Court.

**COUNT VII**
**ASSAULT**
**Under the Laws of the District of Columbia and/or Israeli Law**

232.    The Plaintiffs repeat and re-allege each and every allegation set forth above with

like effect as if alleged herein.

233.    Assault defined as the intentional use of any kind of force, directly or indirectly,

against a person's body, in any manner, without that person's consent; or in an attempt or threat,

by act or gesture, to use force against a person's body, when the person making the attempt or

threat can be reasonably assumed to have the intent or ability to carry out the attempt or threat

234.    The Defendant committed the act of assault and murder against Ayelet Arnin, Sivan Sha'arabany, Avraham Hankin, Ori Mordechai Shani Ben Zussman, Naftali Gordon, Laor Abramov, Nir Binyamin, Ari Fuld, Eitam Henkin, and Max D. Steinberg , assault against Nimrod Arnin, M.H., Mordechai Horowitz, Tova Horowitz, Lilach Naftalyahu, Z.A., R.A., Y.A., Adele Raemer, Adam Levy, Mechel Fendel, Mechi Fendel, David Fendel, Binyamin Bezel Fendel, Gedalya Fendel, Merav Sara Fendel, A.T.F., Bracha F. Vaknin, S.M.V., E.V., M.V., S.R.V., A.V., K.V., Ak.V., Naomi Petel Adler, Amir Adler, E.P.A., N.A., A.C.A and Ido Cohen when their agents intentionally used force against these victims without consent or legal justification.

235.    Defendant herein, supported and aided, abetted, authorized, ratified, encouraged, rewarded and participated in that assault, and the Defendant is therefore liable for that assault.

236.    The Defendant's conduct was criminal, outrageous, extreme, and willfully malicious.

237.    As a direct and proximate result of the willful, wrongful, intentional, and reckless barbaric and murderous acts of HAMAS and its terrorists who were funded and directed by North Korea, Plaintiffs each and all suffered severe personal injuries entitling them to an award of compensatory damages.

238.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

### COUNT VIII
### CIVIL CONSPIRACY
### Under the Laws of the District of Columbia and/or Israeli Law

239.    The Plaintiffs repeat and re-allege each and every allegation set forth above with

like effect as if alleged herein.

240.    Defendant knowingly, willfully, and recklessly conspired and agreed and acted in concert with HAMAS in a common plan and designed to cause an act of coordinated international terrorism, extrajudicial killing, hostage taking and personal injury against, people of the Jewish faith, Israelis, Americans and others in Israel including the attempted kidnapping, murder, hostage taking and injury to the Plaintiffs herein.

241.    As such, Defendant is directly liable for the injuries suffered by the Plaintiffs and therefore, should be held accountable and liable to each of them for that assault.

242.    The Defendant's conduct was criminal, outrageous, extreme, and willfully malicious.

243.    As a direct and proximate result of the willful, wrongful, intentional, and reckless barbaric and murderous acts of HAMAS and its terrorists who were funded and directed by North Korea, Plaintiffs each and all suffered severe personal injuries entitling them to an award of compensatory damages.

244.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

### COUNT IX
### AIDING AND ABETTING
### Under the Laws of the District of Columbia and/or Israel

245.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

246.    Defendant provided HAMAS with material support and resources and other substantial aid and assistance in order to aid, abet, facilitate, and cause the commission of acts of

international terrorism, extrajudicial killing, torture, hostage taking, personal injury, pain and suffering, including the deaths, and personal injuries to these Plaintiffs.

247.    As a result of these acts of international terrorism, extrajudicial killing, torture, hostage taking and personal injury which were caused by resulted from and were facilitated by the Defendant's provision of material support and resources and other acts of aiding and abetting HAMAS, the Plaintiffs suffered damages as enumerated herein.

248.    As such, Defendant North Korea is directly liable for the injuries suffered by the Plaintiffs.

249.    Plaintiffs, each and all of them, suffered severe personal injuries entitling them to an award of compensatory damages.

250.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by applicable law and this Court.

**COUNT X**
**PUNITIVE DAMAGES**
**Under 28 U.S.C. § 1605A(c)**
**(on behalf of all Plaintiffs)**

251.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

252.    The actions of North Korea, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since 1973, and during the years 2000 until today, including the years 2014, 2015 when HAMAS murdered Max Steinberg and Eitam Henkin and in 2018 when HAMAS murdered Ari Fuld, North Korea having been redesignated in 2017 as a State Sponsor of Terror, are heinous in nature, politically motivated, and target the United States of America and the State of Israel, its citizens, residents and visitors,

thereby rendering the Defendant liable for the heinous attacks upon the Plaintiffs, and thereby entitling each of them to an award of damages as shall be determined at trial and in accordance with the laws of the United States.

253.    The acts of the Defendant carried out by its agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The heinous, barbaric, unconscionable murders and killings committed by HAMAS under the sponsorship of the Defendant has resulted in the loss of life, physical and emotional and solatium injuries and damages as above described and was intended as a result by the Defendant. The family members of the murdered and physically and/or emotionally injured Plaintiffs are each victims of the acts of international terror committed by HAMAS with the material support of the Defendant. The actions of the HAMAS terrorists who carried out the attack described was within the scope of their agency on behalf of the Defendant. In accordance with the provisions of 28 U.S.C §1605A(c), the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

254.    The actions of HAMAS, as set forth hereinabove, were intentional and malicious and in willful, wanton, and reckless disregard of the Plaintiffs' rights and physical well-being. The actions of HAMAS were part of its ongoing and continuing campaign of terror committed against citizens of the United States of America and the State of Israel in support of the political and foreign policy goals and aims of HAMAS, of North Korea to reject peace with Israel, to oppose US foreign policy in the region, and to use terror as a means of destroying and annihilating the State of Israel, consistent with the foreign policy and genocidal positions of the Defendant, North Korea, which is an avowed enemy of Israel and opposes US foreign policy in the region. The acts of HAMAS were facilitated through funding, training, and material support by North Korea. In

accordance with 28 U.S.C § 1605A(c) the Defendant, North Korea, is therefore liable for the actions of HAMAS and its terrorists. In providing such funding, material support, direction, and training, North Korea was acting within the scope of its agencies as an instrumentality. Said agencies rendered material support to the terrorists who actually carried out the act of murdering and injuring the Plaintiffs. This Court has previously found the Defendant liable for the support of HAMAS and other Foreign Terrorist Organizations. Notwithstanding said findings, the Defendant North Korea has continued to this day to sponsor and support terror. The Defendant must be punished by this Court for its continuing acts of sponsorship of terror. The Defendant must be held out as an example to the world that this Court will not countenance acts of terror, nor those who materially support and fund terror. A maximal award of punitive damages is requested on behalf of each and all of the Plaintiffs, as against the Defendant North Korea in accordance with the provisions of 28 U.S.C. §1605A(c), which is clearly liable for punitive damages.

255.    WHEREFORE, the Plaintiffs pray that judgment be entered against North Korea on behalf of each Plaintiff, as punitive damages in an amount to be determined by the Court, as against the Defendant and their costs herein expended.

## **PRAYER FOR RELIEF**

256.    WHEREFORE, Plaintiffs, request this Court finds the Defendant, North Korea, liable for the acts alleged herein and enter Judgment against the Defendant as follows:

a.    Awarding each and all Plaintiffs compensatory damages against Defendant North Korea in amounts to which they are entitled by law and as shall be determined at trial in accordance with evidence to be submitted to this Court;

b.    Awarding Plaintiffs and each of them solatium damages against the Defendant North Korea in amounts to which they are entitled by law and as shall be determined at trial in

accordance with evidence to be submitted to this Court;

     c.    Awarding Plaintiffs punitive or exemplary damages against Defendant North Korea as punishment for its continued support for and sponsorship of acts of terror against Americans, and to send a message to the world that this Court will not countenance the continued sponsorship of terror by North Korea, in such amount and consistent with evidence as shall be determined at trial in accordance with evidence to be submitted to this Court;

     d.    Awarding Plaintiffs prejudgment interest and post judgment interest as computed and calculated at the maximum rate allowable by law;

     e.    Awarding Plaintiffs their costs and disbursements and reasonable allowances of reasonable fees for Plaintiffs counsel and experts and reimbursement of expenses as permitted by applicable law;

     f.    Leave to amend this Complaint as the interests of justice may allow; and

     g.    Granting any and all such further and other relief as the Court may deem just and proper.

Dated: September 30, 2024

                              Respectfully submitted,

                              Heideman Nudelman & Kalik, P.C.
                              5335 Wisconsin Avenue, NW, Suite 440
                              Washington, DC 20015
                              (202) 463-1818

                              By: */s/Richard D. Heideman*_____
                                  Richard D. Heideman (DC Bar No. 377462)
                                  Noel J. Nudelman (DC Bar No. 449969)
                                  Tracy Reichman Kalik (DC Bar No. 462055)
                                  Joseph H. Tipograph (DC Bar No. 997533)

                              Counsel for All Plaintiffs

                              Samuel Silverman, Esq.

The Silverman Law Firm, PLLC
16 Squadron Boulevard
New York, NY 10956
(845) 517-0351

Co-Counsel as to the Sha'arabany Plaintiffs, Hankin
Plaintiffs, the Shani Plaintiffs and certain of the Fuld
Plaintiffs